IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MILAD ALLAHAM,                          :
                                        :
                    Plaintiff,          :        CIVIL ACTION NO. 13-3564
                                        :
        v.                              :
                                        :
FADI NADDAF, ELIAS NADAF, and           :
MAJD NADAF,                             :
                                        :
                    Defendants.         :

## MEMORANDUM OPINION

Smith, J.                                                               May 28, 2015

In general, courts may not *sua sponte* dismiss complaints for lack of personal jurisdiction. When a plaintiff seeks the entry of a default judgment, however, this principle is turned on its head as courts have an affirmative obligation to ensure that personal jurisdiction is proper over each defendant against whom such a judgment is sought. This breach-of-contract case required the court to carry out that obligation when the defendants, citizens of the United Arab Emirates ("UAE"), failed to respond to the complaint. After hearing testimony from the plaintiff, the court was constrained to deny his motion for a default judgment and to dismiss this matter for want of personal jurisdiction. Leading to this matter's present posture, the plaintiff filed a timely motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). For the reasons that follow, the court must deny this motion as well.

## I.        PROCEDURAL HISTORY

The plaintiff, Milad Allaham, commenced this action by filing a complaint on June 21, 2013, against the defendants, Fadi Naddaf, Elias Nadaf, and Majd Nadaf. Doc. No. 1. The plaintiff filed three proofs of service (one with respect to each defendant) on October 23, 2013.

Doc. No. 2. After the defendants failed to respond to the complaint, the plaintiff filed a motion for a default judgment on March 20, 2014, in tandem with a request that the clerk of court enter a default against each defendant. Doc. No. 3. Chief Judge Petrese B. Tucker transferred this matter from the Honorable Joel H. Slomsky to the undersigned on April 22, 2014. Doc. No. 4.

To avoid any confusion with respect to the sequencing of requesting a default, as opposed to a default judgment, the court denied the motion for a default judgment without prejudice on June 2, 2014, and instructed the plaintiff to separately file a request for the entry of a default. Doc. No. 5. He filed that request on June 11, 2014. Doc. No. 6. On the same date, the clerk entered a default against each defendant. Unnumbered docket entry between Doc. Nos. 6-7. In response to a court order, the plaintiff filed a renewed motion for a default judgment on August 29, 2014. Doc. No. 8. The court scheduled a hearing on the motion to take place in December and invited the plaintiff to provide information prior to the hearing concerning the issue of personal jurisdiction. Doc. No. 10. Heeding the court's instruction, he filed a brief response, accompanied by an exhibit, on November 10, 2014. Doc. No. 11.

The court held a hearing on the default judgment motion on December 12, 2014, at which time the court heard testimony from the plaintiff with respect to the court's ability to exercise personal jurisdiction over the defendants. The court also provided the plaintiff with an opportunity to more fully address the jurisdictional issue in writing. To that effect, the plaintiff filed a "long-arm statute" brief on December 23, 2014, and later filed an accompanying exhibit on December 29, 2014. Doc. Nos. 13-14.

After reviewing the plaintiff's submissions and the evidence offered at the hearing, the court denied the motion for a default judgment and dismissed this action for lack of personal jurisdiction on December 30, 2014. Doc. No. 15. The plaintiff filed the instant Rule 59(e)

motion on January 19, 2015, in which he asks the court to reconsider the December 30, 2014 ruling. Doc. No. 16.

## II.    DISCUSSION[1]

### A.    Standard of Review

Federal Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). "The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P.*, 769 F.3d 837, 848 (3d Cir. 2014) (internal quotation marks and citation omitted). "A proper Rule 59(e) motion therefore must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (citation omitted).

### B.    Analysis

The sole basis for the Rule 59(e) motion is a contention that the court erred in denying the motion for a default judgment and dismissing this matter for lack of personal jurisdiction because the court failed to recognize that the defendants engaged in certain activities directed at Pennsylvania that supported an exercise of such jurisdiction. *See* Mot. Under Rule 59 of F.R.C.P. to Alter or Amend Order of Dec. 30, 2014 in the Nature of Recons. ("Mot. for Recons.") at ¶¶ 1-2, Doc. No. 16. In other words, the plaintiff effectively argues that the court

---

[1] The plaintiff invoked 28 U.S.C. § 1332(a)(3) as the basis for subject-matter jurisdiction. Compl. at ¶ 5, Doc. No. 1. Given that the plaintiff alleged that he "is a citizen of Pennsylvania, and [the] [d]efendants are citizens or subjects of a foreign state," it appeared that the court had subject-matter jurisdiction under a different subsection, that of (a)(2). 28 U.S.C. § 1332(a)(2); *see Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 770 (3d Cir. 2009) (noting that "[t]he [d]istrict [c]ourt had jurisdiction over [the] action pursuant to 28 U.S.C. § 1332(a)(2) because [the] action [was] between a citizen of a [s]tate and citizens or subjects of a foreign state"). This minor confusion may be of no moment, however, because the personal jurisdiction issue is dispositive and "there is no unyielding jurisdictional hierarchy." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

clearly erred in denying his motion for a default judgment on personal jurisdiction grounds. To understand why this argument does not warrant a disturbance of the court's December 30, 2014 order, the court begins with a brief discussion of the governing standards for default judgments. The court then separately analyzes the issue of personal jurisdiction as a necessary component of those standards. Throughout the analysis, the court consults facts and evidence only to the extent necessary to resolve the relevant legal issues.

### 1.      Standard for Default Judgments

"Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be an entry of default as provided by Rule 55(a)." *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521 n.1 (3d Cir. 2006) (internal quotation marks and citation omitted). After the entry of a default against a specific defendant, Rule 55 further provides that "a court may enter default judgment against that defendant." *FirstBank P.R. v. Jaymo Props., LLC*, 379 F. App'x 166, 170 (3d Cir. 2010) (citation omitted). The entry of a default judgment is not a matter of right as it "is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). "Three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether [the] defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted).

The exercise of this discretion, however, is contingent on a threshold determination that the court may exercise personal jurisdiction over each defendant against whom a default judgment is sought. *See Summit Trust Co. v. Paul Ellis Inv. Assocs., LLC*, No. 2:12-CV-6672, 2013 WL 3967602, at *4 (E.D. Pa. Aug. 2, 2013) (stating that "[i]n considering a motion for

4

default judgment, a court must *first* determine whether it has personal jurisdiction over the party against whom default judgment is requested" (emphasis added) (citations omitted)).  In other words, and in contrast to the general rule that personal jurisdiction is waivable, a court considering a motion for a default judgment must *sua sponte* ensure that an exercise of personal jurisdiction over each defaulting defendant is proper.  *Compare Jasper v. Bexar Cnty. Adult Det. Ctr.*, 332 F. App'x 718, 719 (3d Cir. 2009) (noting the general rule that "because personal jurisdiction may be conferred by consent of the parties . . . a court may not *sua sponte* dismiss for want of personal jurisdiction" (internal quotation marks and citation omitted)), *with AnnexTelecom Co. v. Brown*, No. 13-4605, 2014 WL 5149101, at *1 (E.D. Pa. Oct. 14, 2014) (asserting that "the [c]ourt may only grant a motion for default judgment if it has . . . personal jurisdiction over the parties against whom a judgment for affirmative relief is sought" (citation omitted)), *and Pars Tekstil Sanayi Tic, A.S. v. Dynasty Designs, Inc.*, No. 08-1147, 2008 WL 3559607, at *1 (E.D. Pa. Aug. 13, 2008) (confirming that "[a] district court may not enter a default judgment unless it is satisfied that it has personal jurisdiction over the defendant" (citation omitted)).  "In reviewing its personal jurisdiction, the court does not assert a personal defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."  *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986).

Given the plaintiff's request for a default judgment in this case, the court was bound in accordance with the above principles to *sua sponte* raise the issue of personal jurisdiction before determining whether such a judgment would have been warranted under the *Chamberlain* factors.  After providing the plaintiff with an opportunity to submit evidence and argument on this issue, the court concluded that dismissal of this matter was necessary.  The plaintiff now

challenges that jurisdictional ruling in a postjudgment motion. The court takes this opportunity to explain both the reasons for the ruling and the reasons why it is not called into question by the instant motion.

**2.      The Court Did Not Err in Concluding that the Plaintiff Did Not Satisfy the Requirement of Personal Jurisdiction**

"Generally, a plaintiff bears the burden of proving personal jurisdiction by a preponderance of the evidence." *Corigliano v. Classic Motor, Inc.*, No. 14-3586, 2015 WL 2167743, at *1 (3d Cir. May 11, 2015) (citation omitted). While the plaintiff retains this burden as litigation proceeds, the method of satisfying this burden turns on the type of procedural device used by the court to test jurisdiction. If, on the one hand, the court does not conduct an evidentiary hearing prior to making a jurisdictional determination, "[a] *prima facie* standard, under which the plaintiff's allegations are presumed true and all factual disputes are resolved in the plaintiff's favor, applies." *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 476 (3d Cir. 2011) (citation omitted). If, however, the court holds an evidentiary hearing, "[the plaintiff] shoulders the burden of demonstrating *facts* that establish personal jurisdiction." *Boyd v. Arizona*, 469 F. App'x 92, 97 (3d Cir. 2012) (emphasis added) (citation omitted). The court need not inquire into whether this scheme takes on a different posture in the default judgment context because, as described below, the plaintiff did not satisfy his burden under either standard.

In terms of substantive content, "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014) (citation omitted). "This is because a federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)).

"Because Pennsylvania has chosen to exercise jurisdiction to the fullest extent possible," federal due process limits control. *Isaacs v. Arizona Bd. of Regents*, No. 14-3985, 2015 WL 1534362, at *3 (3d Cir. Apr. 7, 2015) (citation omitted).

The Third Circuit has recently provided a concise overview of the constitutional component of personal jurisdiction:

> [The] due process principles have been characterized as falling under either specific or general jurisdiction. General jurisdiction grants courts the ability to hear any and all claims against out-of-state defendants when their affiliations with the state are so continuous and systematic as to render them essentially at home in the forum [s]tate. General jurisdiction is invoked when the plaintiff's cause of action arises from the defendant's non-forum related activities. Specific jurisdiction, in contrast, is present where the plaintiff's cause of action arises out of a defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum. The exercise of specific jurisdiction is permissible where: (1) the defendant purposely directed his activities at the forum state; (2) the plaintiff's claim arises out of and relates to at least one of those specific activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice.

*Id.* (internal quotation marks and citations omitted). In effect, these two types of jurisdiction are variations on the theme that "the nonresident generally must have certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Walden*, 134 S. Ct. at 1121 (internal quotation marks and citation omitted); *see Daimler*, 134 S. Ct. at 762 n.20 (observing that a discussion of whether it is reasonable to entertain an otherwise jurisdictionally-proper case "would be superfluous" in the context of general jurisdiction). As will become clear, the plaintiff in this matter appeared to rely on both species of jurisdiction; both to no avail.

The court's initial concern with the plaintiff's ability to carry his jurisdictional burden under either theory arose after reviewing the factual allegations appearing in the complaint, which the court was required to take as true until the plaintiff was put to his evidentiary burden. *See Stampone v. Fopma*, 567 F. App'x 69, 70 (3d Cir. 2014) (asserting that the court is "required

to accept the allegations in the complaint as true" and construe any disputed facts in the plaintiff's favor until the court holds an evidentiary hearing (citations omitted)). Those allegations indicated that this purported breach-of-contract dispute began when the plaintiff gave money and jewelry to the defendants in exchange for a partnership interest in a jewelry business located in the UAE. *See* Compl. at ¶¶ 6-7. Thereafter, the plaintiff discovered that the defendants had used the money and the jewelry for their own use. *Id.* at ¶ 8.

Unfortunately, the factual nature of the claim was not fleshed out in any more detail.[2] Thus, with respect to applying the *prima facie* standard, the court was hard pressed to conclude anything other than that the plaintiff had failed to carry his burden at that stage because the court could not even begin to engage in the type of fact-driven analysis necessary to determine jurisdiction. *See Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (stating that "[i]n determining jurisdiction for a breach of contract, the district court must consider the totality of the circumstances" (citation omitted)). Indeed, the court scheduled the December 12 hearing, in part, precisely because the court anticipated that the personal jurisdiction issue would need to be decided on a factual record.

As to that hearing, the court began the proceedings by reiterating the concern with personal jurisdiction. Default J. Hr'g at 2-4, Dec. 12, 2014, Doc. No. 17. Ultimately, the entirety of the evidence adduced at the hearing was directed toward the jurisdictional issue. That evidence, taken from the plaintiff's testimony, revealed the following facts: The plaintiff's wife, Arawah Dai ("Arawah"), first approached him about the possibility of participating in a business

---

[2] Before the hearing, the court put the plaintiff on notice that there was an issue with determining personal jurisdiction. Order, Doc. No. 10. The court invited the plaintiff to provide information with respect to the location of the transaction. *Id.* Instead of filing an affidavit, the plaintiff responded to the court's invitation with a document signed by counsel and an exhibit containing images of the defendants' business cards and of the company website. Pl.'s Resp. to Order of Nov. 6, 2014, Doc. No. 11. That document merely clarified that the plaintiff "sent money and jewelry to the three brothers [the defendants] in the United Arab Emirates, and they converted his money into their own jewelry operation." *Id.* In other words, the only other document of potential relevance to the *prima facie* standard tracked the complaint in its dearth of factual content.

venture with the defendants, Arawah's brothers, in the plaintiff's Allentown, Pennsylvania residence. *See id.* at 5-6. The plaintiff then traveled to the UAE to discuss the potential business venture with the defendants in person. *See id.* at 5-6, 31. At some point, the plaintiff believed that he had agreed to purchase a partnership interest in the defendants' jewelry business. *See id.* at 6, 10. In negotiating the deal, Arawah served as an intermediary. *See id.* at 10. Prior to these discussions, the plaintiff had met the defendants in person outside of the United States. *See id.* at 16.

In seeming reliance on the agreement, the plaintiff wired money from a Pennsylvania bank account to the defendants in the UAE. *See id.* at 7, 22, 29. In addition, he personally gave the defendants jewelry in the UAE. *See id.* at 10. None of the defendants entered Pennsylvania in connection with the formation of the agreement. *See id.* at 31.

Eventually, the defendants opened a jewelry store. *See id.* at 11. The defendants procured some of the jewelry for the business from the United States. *See id.* at 6-7. In particular, Pierre Nadaf ("Pierre"), a brother of the defendants not named as a defendant in this action, would purchase jewelry in the United States and take it to the UAE. *See id.* at 7, 11-12, 22, 23, 29. One time, the plaintiff even gave Pierre money to take to the UAE for the business. *See id.* at 23. The defendants considered Pierre a part of the business. *See id.* at 22, 29.

Although the defendants advertised on the Internet, it was unclear from the testimony as to whether they transacted any business in the United States. *See id.* at 11. During the plaintiff's testimony, he indicated that if one were to order a piece of jewelry from the defendants' website, they would ship it to Pennsylvania via a common carrier. *See id.* at 26-27. Yet, immediately after that statement, the plaintiff testified that the defendants did not sell anything in the United States. *See id.* at 27.

9

At some point in 2009, family members of the defendants, living in Brooklyn, New York, informed the plaintiff that the deal was off and that he should go to the UAE to collect some of the money that he had previously given to the defendants. *See id.* at 12, 13. Approximately two weeks later, the plaintiff went to the UAE to collect the money. *See id.* 13-14. The defendants did not give him any of his money back. *See id.* at 13, 32. They also continued to deny him an ownership interest in the business. *See id.* at 32.

In terms of other potential contacts with Pennsylvania, the plaintiff stated that one of the defendants, Elias Nadaf, was in Pennsylvania at some point, but it was, and still is, unclear as to whether the purpose of his visit was business-related. *See id.* at 24, 33. Although it was also unclear from the record, the other defendants may have also been in Pennsylvania, presumably to buy diamonds to take back to the UAE. *See id.* at 25. At the conclusion of the hearing, the court continued to express concern over personal jurisdiction. *See id.* at 34-35. The court, however, provided counsel for the plaintiff with an opportunity to brief the issue with the benefit of the testimony set forth at the hearing. *See id.* at 37.

In that brief, the plaintiff relied on a secondary source to essentially argue that personal jurisdiction over the defendants was proper both because they used Pierre to purchase jewelry for their business and because this purchase scheme was essential to their business model. *See* Pl.'s Long-Arm Statute Br. at 2-4, Doc. No. 13. As evidenced by the content of the secondary source excerpts cited in the brief and the lack of discussion concerning a nexus between any identified contacts and the plaintiff's cause of action, this argument had the thrust of a general jurisdiction argument. *See id.*; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (maintaining that general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit"). The difficulty with this argument, though, was

that the Supreme Court has stated that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (U.S. 2011) (citation omitted). Neither the allegations nor the evidence satisfied that test.

To be sure, the plaintiff alleged that all defendants were residents of the UAE. *See* Compl. at ¶¶ 2-4. The plaintiff further alleged that the defendants were "citizens or subjects of a foreign state." *Id.* at ¶ 5. The plaintiff's testimony at the hearing only confirmed the accuracy of these allegations. Under any standard of review, general jurisdiction was unavailable to the plaintiff, then, because the allegations and evidence precluded any reasonable inference that the defendants were domiciled in Pennsylvania. Although this was probably enough to conclude that the plaintiff could not have resorted to general jurisdiction, it is acknowledged that, under the above test, domicile reflects only the paradigm forum for the exercise of general jurisdiction and that paradigm does not mean exclusive. But, as in *Daimler*, "this case present[ed] no occasion to explore that question" as the defendants' contacts with Pennsylvania "plainly [did] not approach" any level approximating that which is required to sustain general jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 n.19 (2014).

To the extent that the plaintiff's brief could have been read as embodying a specific jurisdiction argument—and it would have taken a generous interpretation to get to that reading— it was equally unsuccessful. In a breach-of-contract case, the plaintiff must demonstrate that the defendant's "contacts with the forum were instrumental in either the formation or the breach of the contract." *Control Screening LLC v. Technological Application & Prod. Co. (Tecapro), HCMC-Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012) (citation omitted). In establishing the necessary contacts, "physical presence in the forum is no longer determinative in light of modern

11

commercial business arrangements; rather, mail and wire communications can constitute purposeful contacts when sent into the forum." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citation omitted). "[W]here a long-term relationship has been established, actual territorial presence becomes less determinative." *Id.* (citation omitted).

Applying these principles, the glaring (and fatal) defect in the plaintiff's argument, unfortunately, was that the evidence showed that no defendant had any relevant contact with Pennsylvania. To begin, the plaintiff testified that no defendant entered Pennsylvania while the parties negotiated the agreement. Additionally, there was no evidence that the defendants sent any communications into Pennsylvania. Indeed, the plaintiff testified that his wife served as the go-between in negotiating the agreement. With respect to anticipated future consequences, the core object of the agreement, to run a successful jewelry business, was to take place in the UAE. The only direct contact with Pennsylvania supported by a preponderance of the evidence was that Elias Nadaf visited the state a couple of times. However, the plaintiff could not articulate the reason for those visits, leaving the court left to guess whether they had anything to do with the business.

The plaintiff also relied on the fact that Pierre, whose contacts with Pennsylvania were obvious, acted as an agent for the defendants. *See* Pl.'s Long-Arm Statute Br. at 2-4. But the plaintiff's argument did very little by way of establishing that Pierre was, in fact, an agent of the individual defendants by operation of law. Critically, it was not at all clear why Pierre's actions would have been imputed to the individual defendants as opposed to the partnership, let alone whether Pierre was even in a position capable of imputing actions to others. Given the Supreme Court's recent statement that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," the court was constrained, based on the argument

and evidence put forth by the plaintiff, to conclude that he had failed to carry his burden of proving that an exercise of specific jurisdiction was appropriate. *Walden v. Fiore*, 134 S. Ct. 1115, 1123 (2014) (citation omitted). As a result, and given that an invocation of both strains of jurisdiction had failed, the court denied the motion for a default judgment and dismissed this matter without prejudice for lack of personal jurisdiction. *See D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 438 (E.D. Pa. 2006) (stating that "[w]hen a court asked to enter default judgment against a party concludes that it lacks personal jurisdiction over the party, the appropriate procedure is to dismiss *sua sponte* for lack of personal jurisdiction" (citation omitted)).

Not satisfied with this result, the plaintiff filed the instant motion and, in contrast to his previous brief, presents an argument geared more towards specific jurisdiction. This time, the plaintiff argues that the court could have exercised specific jurisdiction over the defendants because they solicited and accepted money from a Pennsylvania resident. *See* Mot. for Recons. at ¶¶ 1-2. As with the brief, the argument principally rests on citation to a single authority. Unlike the brief, however, the plaintiff invokes the persuasive authority of a previously decided district court case. *See* Pl.'s Br. in Supp. of Mot. Under Rule 59 of F.R.C.P. to Alter or Amend Order of Dec. 30, 2014 in the Nature of Recons. ("Pl.'s Br. in Supp."), Doc. No. 16-1.

In that case, decided by the Honorable Cynthia M. Rufe on June 16, 2014, the court held that it could exercise personal jurisdiction over one of the defendants, but not the other. *See Segal v. Zieleniec*, No. 13-7493, 2014 WL 2710989 (E.D. Pa. June 16, 2014). There, the plaintiff advanced various causes of action against two individuals premised on an alleged mishandling of trusts. *See id.* at *1, *3-4. Confronted with a motion to dismiss for lack of personal jurisdiction and for failure to state a claim, the court described each defendant's contacts with Pennsylvania. The first defendant, Samuel Zieleniec ("Samuel"), purposefully

solicited the plaintiff's business via telephone with knowledge that the plaintiff lived in Pennsylvania. *See id.* at *3. Samuel then prepared certain trust agreements and faxed them to the plaintiff's residence in Pennsylvania. *See id.* Additionally, Samuel and the plaintiff "communicated frequently by telephone and email." *Id.* The defendants then set up the trusts to receive wire transfers from the plaintiff's bank, which was located in Pennsylvania. *See id.* Once executed, the trusts "created ongoing obligations of the trustees" and contained a six-month loan term with an opportunity for an extension. *Id.*

The second defendant, Henry Zieleniec ("Henry"), who was, and presumably still is, Samuel's father, began to administer the trusts as a co-trustee only after Samuel ceased all communications with the plaintiff. *See id.* at *1, *6. In contrast to Samuel's actions, Henry did not solicit the plaintiff's business and was not a trustee when the trusts received the plaintiff's wire transfers. *See id.* at *6. And while he did communicate with the plaintiff by way of telephone and email, he received no compensation from the trust accounts. *See id.*

Against this factual backdrop, the court concluded that due process principles supported an exercise of personal jurisdiction over Samuel, but not Henry. *See id.* at *1. Turning first to Samuel, the court deemed it important that not only did he actively solicit the plaintiff's business and enter into agreements that imposed continuing obligations upon him, but he also accepted a management fee "as part of a sum wired from a Pennsylvania bank." *Id.* at *4. In fact, the court stated that his acceptance of the fee provided further evidence that he had "further purposely availed himself of the laws of [Pennsylvania]." *Id.* On the other hand, and with respect to Henry, the court held that it could not constitutionally exercise personal jurisdiction over him because he did not purposely avail himself of the laws of this Commonwealth. *See id.* at *6.

With this holding in mind, the plaintiff interprets *Segal* to stand for the proposition that if a person solicits money from a Pennsylvania resident and later accepts that money in forming a contract, that person becomes amenable to specific jurisdiction in Pennsylvania for a breach-of-contract claim. *See* Pl.'s Br. in Supp. at 2.[3] Even accepting the plaintiff's legal conclusions as correct, the fact remains that there is no evidence to support the notion that the defendants themselves actively solicited money from the plaintiff. If anything, the evidence points in the opposite direction. Again, it was the plaintiff's wife, and not the defendants, who first approached him about the deal. When the plaintiff wanted to talk to the defendants in person, he traveled to the UAE. Further, the defendants did not enter Pennsylvania, either physically or through telephone or email, in connection with the formation of the agreement, presumably because the plaintiff's wife served as the go-between.

Viewed cumulatively, these facts serve to dispositively distinguish *Segal* from the instant case. Not surprisingly, the legal conclusions drawn from the facts of these two cases happen to differ as well. In *Segal*, the court stated that "[b]y accepting a management fee as part of a sum wired from a Pennsylvania bank, Samuel *further* purposely availed himself of the laws of this forum." *Segal*, 2014 WL 2710989 at *4 (emphasis added). Here, the "*further*" aspect is missing. To put it differently, in no manner can *Segal* be read to suggest that personal jurisdiction over a defendant in a breach-of-contract case can be sustained where acceptance of money from a Pennsylvania resident is not preceded by active solicitation purposefully directed at that resident. And the plaintiff does not suggest otherwise. Unfortunately for the plaintiff, though, that factual scenario, however unique it may be, is precisely what is at issue in this case.

---

[3] As a procedural matter, the court notes that this argument appeared to be available to the plaintiff when he filed his initial brief on December 23, 2014. *See Velius v. Township of Hamilton*, 466 F. App'x 133, 137 (3d Cir. 2012) (observing that "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment" (internal quotation marks and citation omitted)).

15

Thus, both *Segal*, and the plaintiff's interpretation of it, are rendered inapposite. As the plaintiff offers no further legal argument in support of his position, the court concludes that no error, let alone clear error, was committed in the court's December 30, 2014 ruling. Therefore, the court must deny the instant Rule 59(e) motion.

### III. CONCLUSION

Respecting the importance of the personal jurisdiction requirement in the default judgment context, the court expressed concern over the plaintiff's ability to satisfy that requirement before the December 12, 2014 hearing, during the hearing, and at the conclusion of the hearing. Unfortunately for the plaintiff, he did not carry his burden of ensuring that that concern was alleviated and the court was reluctantly compelled to dismiss this action. At present, and because the plaintiff has offered no reason to disturb this ruling, the court, in like manner, is reluctantly compelled to deny the Rule 59(e) motion.

An appropriate order follows.

BY THE COURT:

/s/ *Edward G. Smith*
EDWARD G. SMITH, J.

16